**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATANOOGA**

| | |
|---|---|
| **PACTEC INC.,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) **Case No. 1:18-cv-00118-TWP-CHS** |
| | ) |
| **I.C.E. SERVICE GROUP, INC.,** | ) |
| **I.C.E. PACKAGING COMPANY, LLC, and** | ) |
| **STRATEGIC PACKAGING SYSTEMS, LLC,** | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |
| | ) |

<u>**SPECIAL MASTER'S REPORT AND RECOMMENDATIONS FOR CLAIM CONSTRUCTION**</u>

**Table of Contents**

I.      Background                                                                                  3

II.     Legal Standard                                                                             3

        A.  Disavowal of Claim Scope                                                  5

        B.  Prosecution History Estoppel                                            6

        C.  Exclusion of Inventor Testimony                                      7

        D.  Length of Dispute Terms                                                    8

        E.  A Person of Ordinary Skill in the Art                              8

III.    Construction of Disputed Terms                                          10

        A.  Claims in Standard Form                                                  10

            1.  Claim Grouping 1: "dumpster container"                          10

            2.  Claim Grouping 2: "substantially aligned"                       12

            3.  Claim Grouping 3: "series of straps" / "positioned on"      13

            4.  Claim Grouping 4: "extendable across said top portion of said containment bag"      15

            5.  Claim Grouping 5: "fabric bag"                                          18

            6.  Claim Grouping 6: "a single, closeable opening"            19

            7.  Claim Grouping 7: "lifting strap system", "lifting strap sling"      20

            8.  Claim Grouping 8: "adapted to support said bottom," et al.      22

            9.  Claim Grouping 9: "coupling of said fabric bag to said lifting straps," et al.      25

            10. Claim Grouping 10: "free to move vertically," et al.          26

            11. Claim Grouping 13: "lifting frame"                                  28

## I.    Background

This is a patent infringement case involving certain technology behind a waste containment bag. PacTec, Inc. ("PacTec") charges I.C.E. Service Group Inc., I.C.E. Packaging Company, LLC, and Strategic Packaging Systems, LLC (collectively, the "Defendants") with infringement of four United States patents assigned to PacTec: Patent No. 7,073,676 ("the '676 Patent"), entitled "Containment Bag System for Use in a Commercial Disposal Container"; Patent No. 8,894,281 ("the '281 Patent"), entitled "Lifting Bag"; Patent No. 8,894,282 ("the '282 Patent"), entitled "Lifting Bag Device"; and Patent No. 9,365,345 ("the '345 Patent"), entitled "Method of Lifting a Load Using a Bag Coupled to a Lifting Sling."

On July 16, 2020, the Honorable Christopher H. Steger entered an Order appointing the undersigned as Special Master. The Order directed the Special Master to hold a *Markman* hearing and to provide the Court with a report and recommendations related to such hearing. In accordance with the Court's Order, the Special Master held a hearing with the parties on December 17, 2020.  At the hearing, the parties addressed claim construction for the 11 claim groupings that were selected by agreement of the parties on March 13, 2020. After consideration of the parties' arguments and briefs, and pursuant to the foregoing Order, the Special Master's Report and Recommendations for Claim Construction follows. For ease of reference, the claim constructions put forth by the parties and the Special Master's claim construction recommendations are outlined in Appendix A.

## II.    Legal Standard

Before addressing each individual claim, the general principles of claim construction must be addressed. "The construction of a patent claim is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 977 (Fed. Cir. 1995). Claim construction is the first step in a two-part analysis to determine patent infringement. *See, Markman,* 52 F.3d at 976. "To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history." *Markman,* 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1561 (Fed. Cir. 1991)). The

prosecution history is useful to clarify the limitations of patent claims, but "cannot 'enlarge, diminish, or vary' the limitations in the claims." *Markman,* 52 F.3d at 980 (quoting *Goodyear Dental Vulcanite Co. v. Davis,* 102 U.S. 222, 227, 26 L. Ed. 149 (1880)).

A preferred embodiment is "the best mode contemplated by the inventor or joint inventor of carrying out the invention."[1] Each patent includes illustrations or diagrams of the invention. The illustrations or diagrams, together with their associated descriptions represent the inventor's preferred embodiment. "It is improper to read limitations from a preferred embodiment described in the specification-even if it is the only embodiment-into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence may be considered to aid in understanding a patent, it may not be used as a basis to limit patent claims. "Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Markman,* 52 F.3d at 981. For example, videos may be considered to understand the mechanics of an invention. "Extrinsic evidence, therefore, may be necessary to inform the court about the language in which the patent is written. But this evidence is not for the purpose of clarifying ambiguity in claim terminology." *Markman,* 52 F.3d at 986. Likewise, dictionary entries may aid in understanding the language used, but not the limitations of a patent claim.

The parties may introduce expert testimony to help the court understand and interpret a patent. "Expert testimony, including evidence of how those skilled in the art would interpret the claims, may also be used." *Markman,* 52 F.3d at 979 (quoting *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 631 (Fed. Cir. 1987)). Expert testimony, however, is not limiting. "The court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even to exclude it." *Markman,* 52 F.3d at 983.

---

[1] 35 U.S.C. §112, first paragraph.

A person of ordinary skill in the art ("POSITA") understands the plain and ordinary meaning of patent claims. "The words of a claim 'are generally given their ordinary customary meaning.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application" *Phillips,* 415 F.3d at 1313. Generally, claim construction analysis starts by identifying a POSITA. "That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of skill in the pertinent art." *Id.*

Under *Phillips*, "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips,* 415 F.3d at 1312. "A heavy presumption exists that claim terms carry their full ordinary and customary meaning, unless [a party] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321,1334 (Fed. Cir. 2009). There is a heavy burden to overcome the presumption that patent claims should be interpreted based on their ordinary and plain meaning. A patent claim term is interpreted using its ordinary and customary meaning except: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Team Worldwide Corp. v. Wal-Mart Stores, Inc.,* 2018 U.S. Dist. LEXIS 42512, 2018 WL 1353116 (E.D. Tex. 2018).

Each claim must make sense in the context of the entire patent. "Claims must be read in view of the specification, of which they are a part." *Markman,* 52 F.3d at 979. The description of a patent may be used as a dictionary to define the terms of a claim and explain the invention. *See, Markman,* 52 F.3d at 979. "The caveat is that any special definition given to a word must be clearly defined in the specification." *Markman,* 52 F.3d at 980.

### A. Disavowal of Claim Scope

There are several ways for an inventor to disavow claim scope. An inventor may "disavow claim scope 'by distinguishing the claimed invention over the prior art.'" *Techtronic Indus. Co. v. ITC,* 944 F.3d 901, 907 (Fed. Cir. 2019) (quoting *Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304 (Fed. Cir. 1997)). This may appear in the specifications of the patent. "[A]n inventor may disavow claims lacking a particular feature when the specification describes 'the invention' as having that feature." *Poly-America, L.P. v. API Industries, Inc.,* 839 F.3d 1131, 1136 (Fed. Cir. 2016) (quoting *Luminara Worldwide LLC v. Liown Elecs. Co.,* 814 F.3d 1343, 1353 (Fed. Cir. 2016)). The presence of criticism, however, is not enough to demonstrate clear disavowal. "While 'mere criticism' of a particular embodiment will not always rise to the level of disavowal, depending on the rest of the intrinsic record, we must construe claims 'in the light of the specifications and…with a view to ascertaining the invention.'" *Techtronic Indus. Co.,* 944 F.3d at 907 (quoting *United States v. Adams,* 383 U.S. 39, 49 (1966); *See, Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1366-68 (Fed. Cir. 2012)).

Disavowal of claim scope may be found in the prosecution history. "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.,* 438 F.3d 1123, 1136 (Fed. Cir. 2006). "Disavowal may be unlikely where the prosecution history contains contradictory statements but there is also no requirement that the prosecution history reiterate the specification's disavowal." *Techtronic Indus. Co.,* 944 F.3d at 909. Despite this, explicit disavowal of a claim scope need not appear in the specification and prosecution history. "While disavowal must be clear and unequivocal, it need not be explicit." *Poly-America,* 839 F.3d at 1136.

The scope of the claim may also be limited "when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art." *Purdue Pharma L.P.,* 438 F.3d at 1136. Still, any claim scope limitations must be relevant as "*extraneous* limitations cannot be read into the claims from the specification or prosecution history." *Bayer AG v. Biovail Corp.,* 279 F.3d 1340, 1348 (Fed. Cir. 2002).

## B.  Prosecution History Estoppel

In some cases, the United States Patent and Trademark Office ("USPTO") may have rejected an earlier version of a patent application for failure to meet the statutory requirements for patentability enumerated in Section 112 of the United States Code. *See, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 727 (2002). "When the patentee responds to the rejection by narrowing his claims, the prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent." *Id.* at 727. "Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp.,* 535 U.S at 736-737.

To use prosecution history estoppel, evidence that a patentee narrowed patent claims to overcome rejection by the USPTO must exist. "Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented." *Fenner Invs., Ltd v. Cellco P'ship*, 778 F. 3d 1320, 1323 (Fed. Cir. 2015) (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.,* 653 F.3d 1296, 1305 (Fed. Cir. 2011)). In situations where prosecution history estoppel does not apply, the prosecution history may provide insight into how the inventor understands the invention. "Although the prosecution history may not in some cases be as clear a guide as the specification, it nonetheless 'can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'" *Iridescent Networks, Inc. v. AT&T Mobility, LLC,* 933 F.3d 1345, 1353 (Fed. Cir. 2019) (quoting *Phillips,* 415 F.3d at 1317).

## C.  Exclusion of Inventor Testimony

The testimony of an inventor should not be relied upon to determine the scope of a patent claim. *See, Howmedica Osteonics Corp. v. Wright Med. Tech., Inc., 540 F.3d 1337, 1346.* "The subjective intent of the

inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)." *Markman,* 52 F.3d at 985.

In *Bell & Howell*, the appellate court determined the district court improperly relied on inventor testimony. *See, Bell & Howell Document Management Products Company v. Altek Systems,* 132 F.3d 701 (Fed. Cir. 1997). "The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application." *Id.*

### D. Length of Disputed Terms

The Defendants have proposed lengthy claim scope definitions. As acknowledged in recent cases pointed out by PacTec,[2] however, "[t]he focus of the courts in recent years has been to analyze either a single word or at most a short phrase." *Oplus Techs., Ltd. v. Vizio, Inc.,* 2012 U.S. Dist. LEXIS 16530, 2012 WL 5519198 (C.D. Cal. 2012). "Indeed, construing 50-word phrases heightens the risk of a Court rewriting claims." *Id.* The Special Master agrees that short phrases should be used and will issue all recommendations for construing the claim terms using short phrases.

### E. Persons of Ordinary Skill in the Art

Federal courts define persons of ordinary skill in the art, or POSITA, as "a person who is presumed to know the relevant prior art." *Adama Makteshim Ltd. v. Finchimica S.P.A.,* 2017 WL 1968823 (Patent Tr. & App. Bd.). This concept originated in a federal patent statute:

> "A patent for a claimed invention may not be obtained…if the differences between the claimed invention and the prior art are such that the claimed invention as a while would have been obvious before the effective filing date of the claimed invention to a *person having ordinary skill in the art* to which the claimed invention pertains…" 35 USCA § 103.

When determining whether someone is a POSITA, there are "several factors to be considered: 1) the educational level of the inventor, 2) type of problems encountered in the art, 3) prior art solutions to these

---

[2] Doc. 118, p. 14.

problems, 4) rapidity with which innovations are made, 5) sophistication of the technology, and 6) educational level of active workers in the field." *Environmental Designs, Ltd. V. Union Oil Co. of California,* 713 F.2d 693, 696 (Fed. Cir. 1983) (quoting *Orthopedic Equipment Co., Inc. v. All Orthopedic Appliances, Inc.,* 707 F.2d 1376 at 1381–1382 (Fed. Cir. 1983)). All factors may not be present, and any one factor might predominate in a POSITA determination.

Section 103 of the United States Code requires that an invention be obvious to a POSITA and "not to the judge, or to a layman, or to those skilled in remote arts, or to geniuses in the art at hand." *Id.* It stands to reason such categories of people are also excluded from the definition of a POSITA. In addition, a POSITA is likely a person with less ingenuity than the inventor. "[POSITA] is not the inventor, but rather an uncreative person that thinks along conventional lines, never seeking to innovate." *Id.*

A POSITA may not stand amongst the inventors. "Section 103 is not concerned with the actual skill of the inventors—whose skill may be extraordinary—but rather with the level of ordinary skill in the art." *Stewart-Warner Corp. v. City of Pontiac, Mich.,* 767 F.2d 1563, 1570 (Fed. Cir. 1985). The courts do not typically factor in the education level of the inventor when determining who is a POSITA. "Determining the educational level of workers active in the field is only a starting point for defining the level of ordinary skill." *Id.* The courts may consider the variety of educational backgrounds that are available as well as any specialized knowledge that comes from job experience.

In this case, none of the present factors are solely determinative of who is a POSITA. A POSITA is not a person of exceptional skill or knowledge but may be the ordinary worker in the industry. A POSITA may be determined on a case-by-case basis depending on the facts of the case. While the inventors of the patents at issue in this case all acquired a bachelor's degree, their education level may be exceptional. Dr. MacLane has several degrees in related sciences. Beale has only acquired a high school diploma, but he also holds several patents in the industry. Therefore, a bachelor's degree may not be necessary, and a high school degree may prove sufficient to define who is a POSITA. In terms of work experience, Beale claims two years of experience is sufficient while PacTec asserts that eight to 12 years of experience is necessary. Also,

Beale has 38 years of experience in waste packaging and other related fields. Work experience in the relevant industry may be sufficient to understand and interpret the claims in the patents.

The Special Master recommends the Court construe "POSITA" as "a person with at least seven years of experience in the design and fabrication of polymeric components and assemblies without possessing a bachelor's degree in a related scientific or engineering discipline or possessing at least two years of experience in the soft-sided Industrial Waste Containment Bag Industry as of August 2001."

## III.     Construction of Disputed Terms

This Section discusses the claim terms written in standard form according to their claim grouping.

### A.  Claims in Standard Form

#### 1.    Claim Grouping 1: "dumpster container"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "dumpster container" | "A waste container having a solid bottom, four solid sidewalls, and an open top" | "roll off container, gondola rail car container or end dump container, but not a loading frame"<br>**or, alternatively**<br><br>"transport disposal container" |

The Defendants seek to exclude a loading frame from the definition of "dumpster container," but their definition imports elements into the definition that are too narrow. Alternatively, it is understood that a loading frame has a skeletal frame that lacks solid walls.[3]  Using PacTec's proffered definition[4] would exclude a loading frame from the definition of "dumpster container." It effectively leaves out the loading frame and does not import any unnecessary restrictions on the claim. "The combination of a dumpster container and a containment bag according to claim 1 wherein said dumpster container is selected from the set of roll off containers, gondola rail car containers and end dump containers." '676 Patent (2).

---

[3] Doc. 193, p.1
[4] "A waste container having a solid bottom, four solid sidewalls, and an open top"

Roll off containers, gondola rail cars, and end dump containers are all "dumpster containers" under PacTec's definition. During the *Markman* hearing, PacTec referenced an intermodal container as another "dumpster container" used in the industry that is compatible with the waste containment bag. *See, Markman* Hr. at 36:00. PacTec asserted the intermodal container is another usable "dumpster container" that would not fit within the Defendants' definition of a "dumpster container." *See, Markman* Hr. at 39:00.

The Defendants' construction would equate a "dumpster container" to only three specifically proffered alternatives. There is no language in the claims that explicitly limits the term "dumpster container" to only three alternatives. The Defendants improperly read the three alternatives into the definition to limit the claims and exclude the loading frames used in the Beale invention.

The Special Master is not persuaded by the Defendants' argument for disavowal. In the claims, a "dumpster container" is described as "having a plurality of sidewalls defining a top and a bottom, said bottom being closed, said top being substantially open for accepting bulky materials." '676 Patent (1).

Beale's invention requires a loading frame and describes alternatives to the loading frame used by Plaintiffs. "*Alternatively*, a loading frame 59 may be provided by a roll off container 168 (FIGS. 24A and 24B)." '934 Patent, Col. 40, ln 52-53. The roll off container is not the same as a loading frame and is distinguished by needing modifications. "The roll off container 168 is modified by adding a bridge 170 in the middle to provide the loading perimeter 121." '934 Patent, Col. 40, ln. 55-57. The modification is added "so that the loaded and closed container 63 may easily be lifted out of the loading frame 59, or the roll off container 168." '934 Patent, Col. 40, ln. 61-63.

During the *Markman* hearing, the Defendants explained the loading frame is different from a dumpster container because it is not waterproof, and the sides of the frame can be loosely held together by a change. *See, Markman* Hr. at 2:32:20-2:33:51. PacTec referenced '722 Applicant's Appeal Brief where the Examiner stated in Beale's patent, "the frame is not a dumpster container." *See, Markman* Hr. at 49:50. While it can be said the loading frame in Beale's patent is different from the dumpster container in PacTec's

patent, it would be improper to import this difference into the scope of the claims because it goes beyond the language of the claims. Without further evidence, the Defendants have not met their burden for demonstrating disavowal.

The Special Master recommends the Court construe "dumpster container" as "a waste container having a solid bottom, four solid sidewalls, and an open top."

### 2. Claim Grouping 2: "substantially aligned"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "substantially aligned" | Ordinary Meaning | "U-shaped zipper is set inward from the bag's top perimeter edge" |

Although the inventor used the words "U-shaped" and "zipper" in the claim language for the '281 Patent,[5] this language was not included in the '676 Patent. Without such language, the Defendants' proposed construction is a personal description of the embodiment presented in Figure 5 of the '676 Patent.[6]  In addition, "U-shaped zipper" is an inaccurate descriptor for what is essentially a U-shaped opening as distinguished in the '281 Patent. The Special Master finds no reason to read the words "U-shaped zipper" into the language "substantially aligned."

"[I]t is improper to read limitations from a preferred embodiment described in the specification-even if it is only embodiment-into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.,* 358 F.3d at 913. Therefore, it would be improper to allow "said zipper, when opened, creating an opening on said top portion which is substantially aligned with said open top of said dumpster container"[7] to be limited by the shape of the zipper and the

---

[5] "The lifting bag of claim 8 wherein said zipper closes or opens a U-shaped opening." '281 Patent (10).
[6] Doc. 118-2, p. 7.

[7] '676 Patent (13).

position of it in the preferred embodiment. Additionally, the Defendants have not pointed to any evidence in the prosecution history demonstrating PacTec relied on a "U-shaped zipper" to gain approval from the USPTO. Instead, the Defendants merely pointed out a prior claim rejection without addressing how the rejection was overcome.[8]

The Defendants improperly sought to import a "U-shaped zipper" design into a larger phrase. PacTec focused on the shorter phrase "substantially aligned," and pointed out that the phrase refers to the height of the bag when positioned inside of a container. *See, Markman* Hr. at 1:21:58. Both phrases can be construed to reference the height of the bag or where opening of the bag is in relation to a dumpster container.

The Special Master recommends the Court construe "substantially aligned" using its ordinary meaning.

### 3. Claim Grouping 3: "series of straps" / "positioned on"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "series of straps" | *Ordinary Meaning*<br>"more than one" | "plastic straps, such as 1.5-inch polypropylene straps, but not ropes or bungee cords" |
| "positioned on" | *Ordinary Meaning*<br>"located on" | "directly attached" |

The Defendants argue the use of the word "has"[9] means the "series of straps" are a part of the bag itself and cannot be separated. The Defendants further argue the straps are integral to the containment bag and positioned on the exterior surface. *See, Markman* Hr. at 3:20:21. While the Special Master agrees the straps are a part of the containment bag and are not the kind of straps that are sold separately, the Special Master is not convinced they are directly attached to the containment bag.

The Defendants do not reference any authority on the use of the word "has" that would convince the Special Master that "has" in combination with "positioned on" should limit the claim to straps that are

---

[8] Doc 124-2, p.5 and Doc 124, p. 27.
[9] Doc. 191, p. 4

directly attached (i.e., sewn) to the containment bag. To clarify, the straps are not sewn to the top of the bag and, if they extend to the other side in some embodiments, then they are tied to loops or indirectly attached. To use the Defendants' proffered definition[10] for "positioned on" would improperly limit the scope of the claim where that limitation was not proven to be present.

"Positioned on" generally connotes placement and not a mounting method or attachment. The *Merriam-Webster* dictionary[11] supports this interpretation by defining "position" using words like "placing," "arranging," and "location." *Landis on Mechanics of Patent Claim Drafting* also includes "positioned on" in its list of terms to use when a patent writer wants to denote "located on."

Additionally, a "series of straps" is not an ambiguous phrase. A "series" would generally be understood as more than one or a plurality. The Defendants' construction is drawn from the specifications and they have not proven there was heavy reliance on their preferred embodiment in the prosecution history. The Defendants have failed to meet their high standard for disavowal.

The Special Master recommends the Court construe a "series of straps" as "more than one" and "positioned on" as "located on."

### 4. Claim Grouping 4: "extendable across said top portion of said containment bag"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| [where said straps are] "extendable across said top portion of said containment bag" | *Ordinary Meaning*<br>"capable of being extended across the top portion of the containment bag" | [each of the series of straps] "is designed to be extended across the entire top of the containment bag and secured to resist flapping during transport" |

The first substantial difference between PacTec and the Defendants' proposed construction is the phrase "secured to resist flapping during transport." PacTec argues that "secured to resist flapping during transport" should not be added to the construction as a limitation because of claim differentiation. Claim

---

[10] Directly attached.
[11] https://www.merriam-webster.com/dictionary/position

differentiation "normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d. 968, 973 (Fed. Cir. 1999). "A claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 USCS § 112 (d). The Federal Circuit has generally characterized claim differentiation as "the presumption that each claim in a patent has a different scope." *Versa Corp. v. Ag-Bag Int'l Ltd.,* 392 F.3d 1325, 1330 (Fed. Cir. 2004) (quoting *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998)). But "claim differentiation is not a rigid rule." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d. 968, 973 (Fed. Cir. 1999). "[T]he doctrine of claim differentiation creates only a presumption, which can be overcome by strong contrary evidence such as definitional language in the patent or a clear disavowal of claim scope." *InterDigital Commus., LLC v. ITC,* 690 F.3d 1318, 1325 (Fed. Cir. 2012).

This presumption is made even stronger when the only difference between an independent claim and a dependent claim is the limitation in the dependent claim that, in this case, the Defendants seek to have read into the independent claim. *See, InterDigital Commus., LLC v. ITC,* 690 F.3d 1318, 1325 (Fed. Cir. 2012). If "secured to resist flapping during transport" was read into Claim 1, then Claim 12 would be rendered superfluous. Although the "series of straps" may function to "secure to resist flapping during transport" within the context of the patent, that limitation should not be read into "extendable across said top portion of containment bag."

The second function is not explicitly read into the claim itself. "When construing the functional statement in a means-plus-function limitation, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim." *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1322 (Fed. Cir. 2003) (quoting *Generation II Orthotics, Inc. v. Med. Tech., Inc.,* 263 F.3d 1356, 1364-65 (Fed. Cir. 2001). In this case, there is no function associated with "series of straps" other than "extendable across said top portion of said containment bag" in the claim to contradict was stated in the prosecution history. The prosecution history includes "said series of straps, when

extending across said top portion, are securable between opposing sides of said containment bag to restrain said flap"[12] as a functional clause that only describes the result of the technical feature, the extendable strap. This language was added in the Amendments submitted to the Examiner in the prosecution history.

The question is whether this function can be read as a limitation to the scope of the claim. "A disclosed structure is corresponding 'only if the specification or the prosecution history clearly links or associates that structure to the function recited in the claim." *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1322 (Fed. Cir. 2003) (quoting *B. Braun Med., Inc. v. Abbott Labs.,* 124 F.3d 1419, 1424, 43 USPQ2d 1896,1900 (Fed. Cir. 1997). In this case, it is clear from the prosecution history and specification that the structure is linked to the function.

The second substantial difference between PacTec and the Defendants' proposed construction is whether the construction refers to each individual strap or the straps collectively. *See, Markman* Hr. at 1:51:20. The patent language in dispute specifically states, "a *series of straps* positioned on said exterior surface of said containment bag, where said *straps* are extendable across said top portion of said containment bag." '676 Patent (1). In both instances, the word "straps" is used in the plural form. PacTec clarified for the Special Master that according to Claim 12, the straps are securable between opposing sides and meet in the middle. *See, Markman* Hr. at. 1:53:25. The Defendants seek to import a limitation from a preferred embodiment in Figure 6.[13] The phrase "each of" is not found in the language of the claim. The Defendants' interpretation is not an adequate description of how the straps function and would narrow the scope of the claim to exclude a bag when its straps tie in the middle.

Claims must be read in the context of the whole. Dr. MacLean, the expert for PacTec, stated the straps were extendable "the whole way across." Out of context, it appears Dr. MacLean was talking about the

---

[12] Doc. 118-1, p. 15-16, Cl. 33 and 34.
[13] '676 Patent

function generally, but the comment was made about a preferred embodiment that was shown to him at the time of the conversation.[14] This expert opinion may be considered, but it is not determinative.

The Defendants draw evidence from the specifications about Figure 6, where the straps are shown to reach across the bag to the opposite side. In the *Markman* hearing, the Special Master asked the Defendants if there was any evidence the USPTO relied on the individual straps being able to reach across the entire bag when the patent was approved. *See, Markman* Hr. at 2:58:30. The Defendants failed to present any evidence related to the Special Master's question in the *Markman* hearing or the post-*Markman* brief. Instead, the Defendants quoted one of PacTec's statements to the USPTO in their post-*Markman* brief, "the open top of the container is discussed [in the specifications' as the reason straps are needed to cover the top of the bag during transport."[15] While using the "cover" shows PacTec relied on the straps to cover the bag, it does not specify the length of the straps or whether the straps cover the top by individually reaching across the bag to the other side or meeting in the middle on top of the bag.

The Special Master recommends the Court construe "extendable across said top portion of said containment bag" as "[where said straps are] capable of being extended across the top portion of the containment bag."

### 5. Claim Grouping 5: "fabric bag"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "fabric bag" | "a woven or non-woven bag" | "a not self-supporting bag" |

PacTec's proposed construction relies on a limitation from the specification being read into the scope of the claims. The '281 Patent description states "the bag sidewalls and bottom are constructed of a robust flexible fabric, such as 6.0-18+ oz. coated *woven (non-woven)* polypropylene or polyethylene, with coated

---

[14] *See, Markman* Hr. at 3:51:39-3:52:00. The comment was made in reference to Figure 5.
[15] Doc. 191. p.9.

polypropylene being preferred."[16] This is what the bag is actually made of despite that the language used suggests it is merely an example of how the fabric bag may be constructed.

Alternatively, the Defendants' proposed construction relies on limitations from dependent claims being read into independent claims. The only instance where a fabric bag is characterized as also being "non-self-supporting" states, "The lifting bag according to claim 3, wherein said *fabric bag is non-self-supporting*, and wherein said coupling of said fabric bag." '281 Patent (4). Other references to the fabric bag do not include "non-self-supporting" language. Generally, it would be improper to read limitations from dependent claims into independent claims, but this is not a rigid rule. In this case, the Defendants have successfully provided evidence demonstrating PacTec relied on the "non-self-supporting" construction to overcome rejection by the USPTO as the USPTO asked PacTec to amend the specification to include the phrase "the bag is not self-supporting" after the previous version was rejected.

The Special Master recommends the Court construe "fabric bag" as "a woven or non-woven, but not self-supporting bag."

### 6. Claim Grouping 6: "a single, closeable opening"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "a single, closeable opening" | "only one opening [on the fabric bag] which can be opened and closed" | "only one closeable opening on the entire bag" |

PacTec argues the language "a single, closeable opening" pertains only to the fabric bag. The patent language supports this proposed construction. "A lifting bag compromising a) a *fabric bag* having a bottom, as sidewall, and a single, closeable opening, …b) a lifting strap…" '281 Patent (1). "A lifting bag compromising: a) a *fabric bag* defining an interior volume for containing a load…, and a single, closeable opening" '281 Patent (8). "a) providing a lifting bag compromising: i. a *fabric bag* defining an interior

[16] Doc. 118-3, p. 28

volume for containing a load…and a single, closeable opening…" '282 Patent (3).  When the language "a single, closeable opening" is used, it describes the fabric bag as a smaller component of the lifting bag.  A "single, closeable opening" is not expressly asserted for the bag in its entirety.

The Defendants argue a closeable opening is a feature of the entire bag. The Defendants rely on inappropriate preferred embodiments and a prosecution history which states the bag has an opening but does not use the same language the defendants are proposing. The Defendants have failed to point out an instance where the term "a single, closeable opening" is used to describe the "entire bag." Whether there is a liner is immaterial and there is no reason to import an "entire bag" limitation into the scope of the claim.

The Special Master recommends the Court construe "a single, closeable opening" as "only one opening [on the fabric bag] which can be opened and closed."

### 7.  Claim Grouping 7: "lifting strap system", "lifting strap sling"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "lifting strap system" | *Ordinary Meaning*<br><br>"a system comprising a plurality of lifting straps" | "a lifting system comprising a plurality of lifting straps that are everywhere detached from the bag"<br><br>**or, alternatively** |
| "lifting strap sling" | *Ordinary Meaning*<br><br>"[plurality of/a series of] lifting straps configured to support the weight of a bag when lifted" | "a lifting system compromising a plurality of lifting straps that are not sewn to or stitched to the bag" |

PacTec and the Defendants have come to some agreement in determining the proper construction for these claim terms. "PacTec and the Defendants agree that the terms 'lifting strap system' and 'lifting strap sling' are understood to mean 'a plurality of lifting straps,' as this is a common component of both parties' proposed constructions." Doc 118, p. 31. The real issue is whether the straps are "everywhere detached from the bag."

The Defendants' claim construction attempts to read "everywhere detached" into the claim scope. The Defendants rely on PacTec's criticism of the prior art to improperly read limitations into the scope of the claim terms.[17] "A more preferred design is to use a lifting strap system that is *everywhere detached* from the bag or only *indirectly attached* to the bag (e.g., *coupled to the bag*) to support and lift the bag." '281 Patent, Col 6, ln 59-62. After criticizing the prior art, PacTec proposed alternative preferred embodiments to the prior art, which the Defendants pointed out in their opening brief.[18] It is improper to read limitations from a preferred embodiment into the claim language.

The patent states "the side lifting straps can be decoupled from the bag exterior." '281 Patent, col 9, ln 4-5. "The lift straps/bag fabric can move independently in the vertical direction due to detachment of the lift straps from the bag." '281 Patent, col. 9, ln 16-18. Vertical movement refers to how the straps move within the loops. The Defendants rely on the Examiner's comments that call the lifting strap system unique because of the "slidingly *attached* lifting strap system."[19] The Examiner, however, did not use the language "everywhere detached."

There is only one occasion where the straps are characterized as being directly attached to the bag. "The method of claim 4 wherein said lifting straps are fixedly attached to said bag exterior only on said bottom portion." '282 Patent, Claim 9. It is important to note Claim 9 is a dependent claim. "The doctrine of claim differentiation…means that limitations stated in dependent claims are not to be read into the independent claim from which they depend." *Karlin Tech. Inc. v. Surgical Dynamics, Inc., 00002074177* F.3d 968, 971-72 (Fed. Cir. 1999). Although it is not a rigid rule, there was no evidence presented to overcome this presumption. The limitations in Claim 9 of the '282 Patent should not be read into the independent claim.

---

[17] "Merely discussing the disadvantages of a particular feature in the prior art does not operate as a disclaimer of that feature." *Kleen-Tex Indus. v. Mountville Mills, Inc.,* 2006 WL 6143073, *6 (N.D. Ga. October 30, 2006). Disclaimer, via the specification or prosecution history, requires "expressions of manifest exclusion of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Kleen-Tex Indus. v. Mountville Mills, Inc.,* 2006 WL 6143073, *6 (N.D. Ga. October 30, 2006) (quoting *Teleflex, Inc. v. Fiocosa North America Corp.,* 299 F.3d 1313, 1325-1326 (Fed. Cir. 2004)).

[18] Doc. 124, p. 37.

[19] PACTEC-00002074; *See,* Doc.124, p. 42.

It would be improper to import a limitation from another patent into the claim absent clear and unequivocal disavowal. In addition, it would be improper to impute the terms "everywhere detached" to limit the scope of the claims when they include language indicating indirect attachment through coupling and only explicitly reference detachment from the sidewalls.

The Special Master recommends the Court construe "lifting strap system" as "a system compromising a plurality of lifting straps" and "lifting strap sling" as "lifting straps configured to support the weight of a bag when lifted."

### 8. Claim Grouping 8: "adapted to support said bottom," et al.

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction (for <u>all</u> Claim Grouping 8 terms) |
|---|---|---|
| "adapted to support said bottom" | *Ordinary Meaning*<br><br>"capable of reinforcing the bottom by bearing all or part of the weight of the load" | "allowing the bag to be lifted without using the bag fabric itself to support a lifting force so that the bag vertically floats about the lifting straps" |
| "support the bottom" | *Ordinary Meaning*<br><br>"reinforce the bottom by bearing all or part of the weight of the load" | |
| "supporting the load" | *Ordinary Meaning*<br><br>"bear all or part of the weight of the load" | |
| "supported entirely by the lifting sling" | *Ordinary Meaning*<br><br>"bear all the weight of the load" | |
| "adapted to support a load within said fabric bag" | *Ordinary Meaning*<br><br>"capable of bearing all or part of the weight of the load within the fabric bag" | |
| "adapted to support said fabric bag" | *Ordinary Meaning*<br><br>"reinforce the fabric bag" | |

| | | |
|---|---|---|
| "weight is lifted and supported by said series of coupled lifted straps" | *Ordinary Meaning*<br><br>"weight is raised and borne by the lifting straps connected to the lifting device" | |
| "said fabric bag and said load is supported only by said coupled lifting straps" | *Ordinary Meaning*<br><br>"the bag and load are reinforced by the lifting straps which bear all of the weight of the load" | |

For Claim Grouping 8, the Defendants ask the Special Master to clump separate claim terms under one umbrella and give them all the same meaning. "[T]his court has characterized claim differentiation more generally, i.e., as the 'presumption that each claim in a patent has a different scope.'" *Curtiss-Wright* at 1380 (quoting *Versa Corp. v. Ag. Bag Int'l Ltd., 392 F.3d 1325, 1330* (Fed. Cir. 2004). Despite this, "claim drafters can also use different terms to define the exact same subject matter." *Curtiss-Wright* at 1380. This means claim differentiation is not a rigid rule. In this case, however, the Special Master does not construe the claim terms in the same manner as the Defendants.

The Defendants argue additional language was added to the Additional Preferred Embodiment Paragraph by PacTec to overcome the Examiner's rejection[20] and this reliance should result in new language being imported to limit the claim terms. The new language discussed in the referenced paragraph, however, does not include the phrase "vertically floats." The Defendants failed to provide sufficient evidence the paragraph[21] is about the phrase "vertically floats." Instead, it appears the Defendants merely seek to import an extraneous phrase from the descriptions into the claim language as a limitation. The Special Master rejects this as it would be improper to read an extraneous limitation from a preferred embodiment into the claim. The Defendants failed to meet their burden of demonstrating PacTec heavily relied on the phrase "vertically floats" to overcome rejection.

---

[20] "In order to overcome the rejection, PacTec added the Additional Preferred Embodiment Paragraph to the specification in 2013 and relied on it." Doc. 124, p. 44.
[21] Additional Preferred Embodiment Paragraph, Doc. 124-5, p.5.

Although the patent's specification includes the phrase "floats about the lifting straps," it does not necessarily mean that the straps are "everywhere detached" from the bag. There is no explicit language in the claims, specifications, or prosecution history that explains the phrase as such. The straps are decoupled or indirectly attached to the bag.

The Special Master recommends the Court construe "adapted to support said bottom" as "capable of reinforcing the bottom by bearing all or part of the weight of the load," "support the bottom" as "reinforce the bottom by bearing all or part of the weight of the load," "supporting the load" as "bear all or part of the weight of the load," "supported entirely by the lifting sling" as "bear all the weight of the load," "adapted to support a load within said fabric bag" as "capable of bearing all or part of the weight of the load within the fabric bag," "adapted to support said fabric bag" as "reinforce the fabric bag," "weight is lifted and supported by said series of coupled lifted straps" as "weight is raised and borne by the lifting straps connected to the lifting device," and "said fabric bag and said load is supported only by said coupled lifting straps" as "the bag and load are reinforced by the lifting straps which bear all of the weight of the load."

9. **Claim Grouping 9: "coupling of said fabric bag to said lifting straps," et al.**

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction (for all Claim Grouping 9 terms) |
|---|---|---|
| "coupling of said fabric bag to said lifting straps" | "indirect attachment of the fabric bag to the lifting straps" | "indirect attachment of the bag to the lifting straps such that the straps can move vertically in an unrestricted manner with respect to the bag" |
| "couple the lifting straps to the fabric bag" | "indirectly attach the lifting straps to the fabric bag" | |
| "said lifting straps coupled to said fabric bag" | "the lifting straps are indirectly attached to the fabric bag" | |
| "coupled to one of said top loops" | "indirectly attached to one of the top loops" | |
| "not directly attached to said bag" | "indirectly attached to the bag" | |

The parties dispute the meaning of several phrases found in the '281, '282, and '345 Patents, which generally describe the coupling of straps to the fabric bag. PacTec admits that "coupling" means "indirect attachment." *See,* Doc. 118, p. 32. Whenever any form of the term "coupling" is used, it may be acceptable to substitute it for "indirect attachment."

The Defendants argue PacTec limited its claims during prosecution by amending the claims to distinguish them from prior art to overcome rejection. "As explained above, the Additional Preferred Embodiment Paragraph was added by the 2013 Amendment to the '281 Patent and was specifically relied upon by PacTec in order to: a) distinguish its invention over the prior art of record, including Beale's patent, and b) overcome rejections made by the USPTO." Doc. 124, p. 46.

The phrase "free vertical movement" is mentioned in the Additional Preferred Embodiment Paragraph and added into the specification of the claim. This phrase describes how the straps move in relation to the loops as the contents of the bag settle to the bottom and how the bag fits within the straps as it is lifted. The straps move vertically within the loop. It would be erroneous to assume that "free" means the bag is given unlimited range of motion as if the bag is completely unattached to the straps. There is some restriction in the sense that the straps are bound by the loops they are routed through.[22]

The Defendants argue the straps must be completely detached from the bag so that they "float" in the loops. It would be improper to import a limitation of the lifting straps being "everywhere detached" since the claim only says the straps are detached from the side and one version of the bag has straps stitched to the bottom of the bag.

The Special Master recommends the Court construe "coupling of said fabric bag to said lifting straps" as "indirect attachment of the fabric bag to the lifting straps," "couple the lifting straps to the fabric bag" as "indirectly attach the lifting straps to the fabric bag," "said lifting straps coupled to said fabric bag" as

---

[22] *See*, *Markman* Hr. at 6:18:15.

"the lifting straps are indirectly attached to the fabric bag," "coupled to one of said top loops" as "indirectly attached to one of the top loops," and "not directly attached to said bag" as "indirectly attached to the bag."

### 10. Claim Grouping 10: "free to move vertically," et al.

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "free to move vertically" | "moveable in the vertical direction" | "free to move vertically due to the lifting straps being everywhere detached from the bag" |
| "allowing the lifting strap to move vertically" | "allowing the lifting strap to move in the vertical direction" | "allowing the lifting straps to be movable vertically due to the lifting strap being everywhere detached from the bag" |
| "allow the lifting straps to be slidable vertically" | "allow the lifting straps to be slidable in the vertical direction" | "allow the lifting straps to be slidable vertically due to the lifting straps being everywhere detached from the bag" |
| "said lifting strap system is slidable with respect to said bag" | "lifting strap system is slidable relative to the fabric bag to the points where the lifting straps are indirectly attached to the fabric bag near the bag top portion" | "slidable with respect to said bag due to the lifting strap system being everywhere detached from the bag" |
| "top edge of said bag moves vertically downward" | "the top edge of the bag is moveable downward in the vertical direction" | "top edge of said bag moves vertically downward due to the lifting straps being everywhere detached from the bag" |
| "top edge moves vertically downward" | "top edge moves downward in the vertical direction" | "top edge moves vertically downward due to the lifting strap system being everywhere detached from the bag" |
| "allow the coupled lifting straps to be moved vertically" | "allowing the coupled lifting straps to move in the vertical direction" | "allow the coupled lifting straps to be moveable vertically due to the lifting straps being everywhere detached from the bag" |

PacTec and the Defendants largely agree on the construction of the claim terms except for the Defendants' addition of "everywhere detached from the bag." Because of this, the focus should be on whether the straps are everywhere detached from the bag. "For instance, the top of the bag may 'settle' to the load line since the lift straps are detached from the sides of the bag. By 'detached' is meant that the lift

straps are not directly attached (sewn, welded, adhered) to the bag fabric." '281 Pat. Col. 9, ln 12-16. During the *Markman* hearing, PacTec explained the straps move vertically within the loops. *See, Markman* Hr. at 6:25:30.

The Defendants argue this vertical movement can only occur if the straps are not stitched to the bag.[23] This is an incorrect assumption regarding how the bag works as the straps were described as only being detached on the sides. The Defendants have failed to prove the straps are "everywhere detached from the bag." There is no reason to assume the straps are detached from the entire bag.

The Special Master recommends the Court construe "free to move vertically" as "moveable in a vertical direction," "allowing the lifting strap to move vertically" as "allowing the lifting strap to move in a vertical direction," "allow the lifting straps to be slidable vertically" as "allow the lifting straps to be slidable in a vertical direction," "said lifting strap system is slidable with respect to said bag" as "lifting strap system is slidable relative to the fabric bag at the points where the lifting straps are indirectly attached to the fabric bag near the bag top portion," "top edge of said bag moves vertically downward" as "the top edge of the bag is moveable downward in the vertical direction," "top edge moves vertically downward" as "top edge moves downward in the vertical direction," and "allow the coupled lifting straps to be moved vertically" as "allowing the indirectly attached lifting straps to move in a vertical direction."

### 11. Claim Grouping 13: "lifting frame"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "lifting frame" | "a structure for lifting" | "a grid structure having a plurality of parallel lift bars connected to a center support and a plurality of lifting hooks, wherein each lifting hook is designed for receiving one lifting strap connector" |

---

[23] *See*, *Markman* Hr. at 6:27:36.

PacTec argues limitations should not be read from the preferred embodiment. "It is improper to read limitations from a preferred embodiment described in the specification-even if it is the only embodiment-into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co.,* 358 F.3d at 913. PacTec also argues there was no clear disavowal in the specification or prosecution history. Doc. 118, p. 34. The Special Master disagrees.

"Lifting frame" is not given a definition in the claims, but it is a broad general term a POSITA would understand. The language of the claims relating to the lifting frame states, "said method further comprising the steps of positioning a *lifting frame* above said loaded lifting bag…" and "said method further comprising the steps of raising said *lifting frame* upwardly" '282 Patent (4). There are other instances where a frame is mentioned, but it is not clear whether the inventor is referring to the lifting frame or the loading frame. The only frame that is clearly defined in claim 4 of the '282 Patent is a loading frame.

According to the descriptions in the specifications:

> "The lifting bag, once loaded or filled, can be lifted using a lifting frame, such as shown in FIG. 8 U.S. Pat. No. 6,142,727 and FIG. 14 herein, (suitable modified for the number of straps on the bag to be lifted) or *any other type of lifting frame known in the art*. For instance, a square frame lifting frame may be used instead of the parallel lifting bars attached with a center support such as shown in FIG. 14 of the '662 application." '282 Patent Col 9, In 5-12.

PacTec heavily relied on the prior art's lifting frame as an example of what should be used with the bag. Although it is not specific to the invention and any lifting frame may be used, the prior art's version of the lifting frame was used in the preferred embodiment. In Figure 14 of the PCT Application (US06/06662), the illustration includes the lifting frame from Beale's '727 Patent. PacTec pointed out alternatives including rope, webbing, and a lifting crane, but those are alternatives for a lifting frame. They cannot be used to define what a "lifting frame" is. "Ultimately, the only meaning that matters in claim

construction is the meaning in the context of the patent." *Poly-America, L.P. v. API Indus., Inc.,* 839 F.3d 1131, 1137 (Fed. Cir. 2016).

The Defendants argue a POSITA would understand "lifting frame" to be "a grid structure having a plurality of parallel lift bars connected to a center support and a plurality of lifting hooks, wherein each lifting hook is designed for receiving one lifting strap connector." Doc. 124, p. 54. The Special Master agrees with the Defendants.  The Special Master also concludes the lifting frame mentioned in PacTec's patent is the lifting frame in Beale's '727 Patent.

The Special Master recommends the Court construe "lifting frame" as "a grid structure having a plurality of a parallel lift bars connected to a center support and a plurality of lifting hooks, wherein each lifting hook is designed for receiving one lifting strap connector."

Respectfully submitted,

Karl Bayer
karl@karlbayer.com
14900 Avery Ranch Blvd., Suite C200
Austin, TX 78717
(512) 345-8537


By:_____
    Karl Bayer
    **SPECIAL MASTER**

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document has been served on all counsel of record by electronic service through the CM/ECF on this 15th day of April, 2021.


By:      /s/ Karl Bayer                    

Karl Bayer