# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | |
|---|---|
| PACTEC, INC.,              ) | Case No. 1:18-cv-118 |
|                      ) | |
|      *Plaintiff*,     ) | Judge Travis R. McDonough |
|                      ) | |
| v.                      ) | Magistrate Judge Christopher H. Steger |
|                      ) | |
| I.C.E. PACKAGING COMPANY, LLC,  ) | |
| I.C.E. SERVICE GROUP, INC., and    ) | |
| STRATEGIC PACKAGING SYSTEMS,  ) | |
| LLC,                   ) | |
|      *Defendants*.    ) | |

---

## MEMORANDUM OPINION

---

On December 17, 2020, Special Master Karl Bayer conducted a *Markman* hearing on the parties' proposed claim constructions in this matter. On April 17, 2021, after post-*Markman* briefing by the parties, Special Master Bayer submitted his report and recommendations to the Court (Doc. 195). Plaintiff Pactec, Inc. ("Pactec"), and Defendants I.C.E. Packaging Company, LLC, Strategic Packaging Systems, LLC, and I.C.E. Service Group, Inc. (collectively "I.C.E."), timely filed objections to the Special Master's report and recommendations. (*See* Docs. 197, 201.) For the following reasons, the Court **ADOPTS IN PART** and **MODIFIES IN PART** the Special Master's report and recommendations.

## I.    BACKGROUND

Pactec, filed the present patent-infringement suit against I.C.E. in June 2018, alleging infringement of certain proprietary technology in the waste-containment bag industry. (Doc. 1.) Specifically, Pactec contends that I.C.E. is infringing four of its patents: Patent No. 7,073,676, "Containment Bag System for Use in a Commercial Disposal Container" ("the '676 Patent"),

Patent No. 8,894,281, "Lifting Bag" ("the '281 Patent"), Patent No. 8,894,282, "Lifting Bag Device" ("the '282 Patent"), and Patent No. 9,365,345, "Method of Lifting a Load Using a Bag Coupled to a Lifting Sling" ("the '345 Patent").[1]  (*See* Doc. 1.)  All four patents involve waste-containment bags.  (*See id*. at 3.)  The '676 bag is not intended to be lifted.  Instead, it is filled and transported prior to discard.  The '281, '282, and '345 Patents all contemplate waste-containment bags that are intended to be loaded and lifted using a lifting apparatus before discard.  (*See* Doc. 188.)

The parties consented to proceeding before a magistrate judge in July 2019, and the case was referred to United States Magistrate Judge Christopher H. Steger.  (Doc. 86.)  Magistrate Judge Steger appointed attorney Karl Bayer as Special Master on August 25, 2020.  (Doc. 138.)  In December 2020, Special Master Bayer conducted a claim-construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  (*See* Doc. 188 (transcript of December 17, 2020 hearing).)  The parties were tasked with creating "claim groupings" to streamline the claim-construction process.  They agreed on thirteen different claim groupings[2]:

| Claim Group | Terms | Patent-in-Suit |
|---|---|---|
| Claim Grouping 1 | "dumpster container" | '676(1) |
| Claim Grouping 2 | "substantially aligned" | '676(1) |
| Claim Grouping 3 | "series of straps" "positioned on" | '676(1) |
| Claim Grouping 4 | "extendable across said top portion of said containment bag" | '676(1) |
| Claim Grouping 5 | "fabric bag" | '281(1), (18) |

[1] Because questions of validity and infringement are not relevant to claim construction, the Court needs not recite additional facts to decide the issue presently before it.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

[2] I.C.E. does not object to the Special Master's recommendations regarding "dumpster container," "fabric bag," and "lifting frame."  (Doc. 202, at 32.)  It does not raise specific objections to Claim Groupings 8, 9, or 10, either.  (*See generally id*.)  Pactec urges adoption of the Special Master's proposed constructions except for his construction of the term "fabric bag." (Doc. 197.)

2

| | | '282(3), (4) |
| | | '345(1), (6) |
| Claim Grouping 6 | "a single, closeable opening" | '281(1), (18) |
| | | '282(3), (4) |
| | | '345(1), (6) |
| Claim Grouping 7 | "lifting strap system" | '281(1), (18) |
| | "lifting strap sling" | '282(3), (4) |
| | | '345(1), (6) |
| Claim Grouping 8 | "adapted to support said bottom" | '281(1), (18) |
| | "support the bottom" | '282(3), (4) |
| | "supporting the load" | '345(1), (6) |
| | "supported entirely by the lifting sling" | |
| | "adapted to support a load with said fabric bag" | |
| | "adapted to support said fabric bag" | |
| | "weight is lifted and support by said series of coupled lifting straps" | |
| | "said fabric bag and said load is supported only by said coupling lifting straps" | |
| Claim Grouping 9 | "coupling of said fabric bag to said lifting straps" | '281(1), (18) |
| | "couple the lifting straps to the fabric bag" | '282(3), (4) |
| | "said lifting straps coupled to said fabric bag" | '345(1), (6) |
| | "coupled to one of said top loops" | |
| | "not directly attached to said bag" | |
| Claim Grouping 10 | "free to move vertically" | '281(1), (18) |
| | "allowing the lifting strap to move vertically" | '282(3), (4) |
| | "allow the lifting straps to be slidable vertically" | '345(1), (6) |
| | "said lifting strap system is slidable with respect to said bag" | |
| | "top edge of said bag moves vertically downward" | |
| | "allow the coupled lifting straps to be moved vertically" | |
| Claim Grouping 13 | "lifting frame" | '282(4), (9) |

Claim Groupings 1 through 4 involve claims in the '676 Patent, the non-lifting waste-containment bag. The rest of the groupings pertain to the other three patents-in-suit, the '281, '282, and '345 Patents, the lifting bags. The parties presented their proposed claim constructions by grouping in briefing and orally before the Special Master at the *Markman* hearing. (*See* Docs. 118, 124.) In September 2021, the case was reassigned to the undersigned. The parties timely filed and briefed their objections to the Special Master's report and recommendation (Docs. 197, 202), and the objections are now ripe for adjudication.

3

## II.    STANDARD OF LAW

The Court conducts a de novo review of the Special Master's report and recommendations.  Fed. R. Civ. P. 53(f)(3).  The Court may "adopt or affirm, modify, wholly or partly reject or reverse" the Special Master's report and recommendations after allowing the parties to make objections.  Fed. R. Civ. P. 53(f)(1); *see also Gulino v. N.Y. City Bd. of Educ.*, Case No. 96-cv-8414, 2021 WL 3520798, at *1 (S.D.N.Y. Aug. 9, 2021).

## III.    ANALYSIS

*Markman* prescribes that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court."  517 U.S. at 372.  "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."  *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  "The words of a claim are generally given their ordinary and customary meaning."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  "[A] claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention."  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).  The "ordinary and customary meaning" of a claim is determined with reference to "the meaning it would have to a person of ordinary skill in the art."  *Id.*  Generally, claim construction is intended to aid the jury in determining "the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to intelligently determine the questions presented."  *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).

4

To ascertain how a person of ordinary skill in the art[3] would understand the disputed terms, courts first look to intrinsic evidence in the form of the claims, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record . . . . Such evidence is the most significant source of the legally operative meaning of disputed claim language."). Extrinsic evidence is disfavored where intrinsic evidence "resolve[s] any ambiguity in a disputed claim," *id.*, and it "may not be used to vary or contradict the claim language." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1358 (Fed. Cir. 2003); *see also Virtnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014) ("Although courts are permitted to consider extrinsic evidence like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record."); *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) ("If the meaning of the claim is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence." (citing *Profectus Tech. v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016))).

## A.    Claim Grouping 1: "dumpster container"

The Special Master proposes that Claim Grouping 1, which consists solely of the claim term "dumpster container"[4] in the '676 Patent be interpreted to mean "a waste container having a

---

[3] The parties have not objected to the Special Master's recommended definition of a person of ordinary skill in the art. He recommended the following definition: "a person with at least seven-years' experience in the design and fabrication of polymeric components and assemblies without possessing a bachelor's degree in a related scientific or engineering type discipline or possessing at least two years of experience in the soft-sided Industrial Waste Containment Bag Industry as of 2001." (Doc. 195, at 10.)

[4] Independent claim one of the '676 Patent states: "1. The combination of a dumpster container and a containment bag, said dumpster container having a plurality of sidewalls defining a top and

solid bottom, four solid sidewalls, and an open top." (Doc. 195, at 12.) In doing so, the Special Master adopts Pactec's proposed construction of the term. (*See id*.) Pactec and I.C.E. do not object to the Special Master's proposed construction and ask the Court to adopt it. Nonetheless, I.C.E. requests "clarification" of the construction and asks the Court to confirm that "dumpster container" excludes "loading frame[s]." (Doc. 202, at 7.)

The heart of the disagreement is whether loading frames that have four solid sidewalls, a solid bottom, and an open top are included or excluded from the '676 Patent. Defendants seek to limit the construction of dumpster container to "roll off container, gondola rail car container or end dump container, but not a loading frame." (Doc. 195, at 10.) Special Master Bayer notes in his report and recommendation that a loading frame is "a skeletal frame that lacks solid walls," (Doc. 195, at 10), and Pactec readily admits that skeletal frames are excluded from the Special Master's proposed construction. (Doc. 203, at 7.) According to Pactec, though, loading frames may also be "nothing more than a waste container used during loading operations." (*Id*.) Pactec contends that these frames—which have four solid sidewalls, a solid bottom, and an open top— are included within the Special Master's recommended construction. (*Id*.)

The Court finds that Special Master Bayer's report and recommendation is clear on this point. To the extent that a loading frame is a skeletal loading frame, it is excluded from the claim term "dumpster container." To the extent, however, that a container with four solid sidewalls, a solid bottom, and an open top is used to load the '676 Patent bag, this type of container, whether considered a "loading frame" or not, is fairly contained within the boundaries of the proposed construction.

---

a bottom, said bottom being closed, said top being substantially open for accepting bulky materials . . . ." (Doc. 187-2, at 9.)

The Special Master's analysis is persuasive. Claim one of the '676 Patent reads:

The combination of a dumpster container and a containment bag, said dumpster container having a plurality of sidewalls defining a top and a bottom, said bottom being closed, said top being substantially open for accepting bulky materials . . . .

(Doc. 187-2, at 9.) The claim language is clear, and the specification confirms that the term "dumpster container" is intended to encompass containers with a closed bottom, four solid sidewalls, and an open top. (*See* Doc. 187-2, at 2–4, 8.) The Court therefore adopts the Special Master's proposed construction of dumpster container: a waste container having a solid bottom, four solid sidewalls, and an open top.

**B.     Claim Grouping 2: "substantially aligned"**

I.C.E. objects to the Special Master's proposed construction of the claim term "substantially aligned." (Doc. 202, at 8.) Special Master Bayer recommended that "substantially aligned" be construed in accordance with its ordinary meaning—that is, the top of the bag, or the opening of the bag, is substantially aligned with the top of the container in which the bag is placed. (Doc. 195, at 13.) Contrary to the Special Master's recommendation and Pactec's assertions, I.C.E. contends that the phrase containing "substantially aligned" should instead be constructed as "U-shaped zipper is set inward from the bag's top perimeter edge." (Doc. 124, at 25.)

"A determination that a claim needs no construction or has the plain and ordinary meaning may be inadequate when a term has more than one ordinary meaning or when reliance on a term's ordinary meaning does not resolve the parties' dispute." *O2 Micro*, 521 F.3d at 1361 (citations and internal quotations omitted). Nonetheless, "a sound claim construction need not always purge every shred of ambiguity." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016). The "construction that stays true to the claim language and

most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id*. at 1321 (citing *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

There are two exceptions to the general rule that claims be given their ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The standard for disavowal is "exacting," and "absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Id*. (quoting *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004)); *see also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("To disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").

Additionally, the Court should be careful not to "read limitations from the specifications into claims . . . , [as] there must be a clear and unmistakable disclaimer." *Thorner*, 669 F.3d at 1366–67. This is avoided by "keep[ing] in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips*, 415 F.3d at 1323. "[D]isparaging comments alone do not necessarily show a manifest or express disavowal of the criticized subject matter." *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1336 (Fed. Cir. 2009) (citing *Ventana Med. Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1342–44 (Fed. Cir. 2001)). Disavowal "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.

Cir. 2003). The Federal Circuit has, however, "consistently rejected prosecution statements too vague or ambiguous to quality as a disavowal of claim scope." *Id*. at 1325 (citing *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002)).

Special Master Bayer properly addressed I.C.E.'s argument regarding claim disavowal. I.C.E. argues that "Pactec has admitted that the '676 Patent is limited to a u-shaped zipper closure," but the intrinsic evidence does not support this assertion. (Doc. 124, at 25.) I.C.E.'s argument primarily rests on Pactec's amendment to claim one of the '676 Patent, which added the words "a zipper positioned on said top portion, when opened, creating an opening on said top portion which is substantially aligned with said top of said dumpster container." (*Id*. at 26.) Through the amendment and its reliance on Figures 5 and 6, reproduced below, I.C.E. contends that Pactec specifically disavowed any construction that includes a center zipper, and I.C.E. further argues that a center zipper is not one that is "substantially aligned" with the dumpster container. (*Id*. at 27.)



FIG 5



FIG 6

Because the intrinsic evidence thoroughly addresses the issue, there is no need to resort to extrinsic evidence to construe this claim. *See Riverwood Int'l*, 324 F.3d at 1358. Pactec did not explicitly disavow center-zippered bags in the '676 Patent's specification. The specification merely notes that the bag will have a "single opening" with a "sealable closing means, such as a zipper." (Doc. 187-2, at 8.) This does not meet the exacting standard of claim disavowal. And, while limiting a claim to a preferred embodiment is appropriate in some circumstances, this is not one of them. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Furthermore, there is no evidence in the prosecution history that establishes a clear disavowal of any zipper that is not u-shaped. Therefore, the Court overrules I.C.E.'s objections and agrees with Special Master Bayer that "substantially aligned" should be construed in accordance with its ordinary meaning: the bag is substantially aligned with the top of the container.

### C. Claim Grouping 3: "series of straps" and "positioned on"

The Special Master defined "series of straps" as a "more than one" and defined "positioned on" as "located on." (Doc. 195, at 14.) I.C.E. has not objected to the Special

10

Master's construction but, again, seeks "clarification." (Doc. 202 at 13.) However, the clarification I.C.E. seeks is, in reality, a significantly different construction of the phrase at issue: "straps, such as 1.5-inch polypropylene straps, but not ropes or bungee cords." (*Id.* at 14.) Because I.C.E encourages the Court to adopt its preferred interpretation of the two disputed claim terms, the Court will treat I.C.E.'s request for clarification as an objection.

"The claim construction inquiry [] begins and ends in all cases with the actual words of the claim." *Renishaw*, 158 F.3d at 1248. As for the specification, courts may "look to the written description to define a term already in a claim limitation" but "may not read a limitation into a claim from the written description." *Id*. (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Where a specification does not require a limitation, that limitation should not be read from the specification into the claims." *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988). "For example, if an apparatus claim recites a general structure (*e.g.*, a noun) without limiting that structure to a specific subset of structures (*e.g.*, with an adjective), we will generally construe the claim to cover all known types of that structure that are supported by the patent disclosure." *Renishaw*, 158 F.3d at 1250 (citing *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865–66 (Fed. Cir. 1997)).

I.C.E. contends that the Court should look to Figure 6 of the '676 Patent and conclude that "the only definition that makes sense" after examination of the evidence is "a plurality of individual straps positioned in a row along the top of the bag, each of which is directly attached to the exterior surface of the bag." (Doc. 124 at 29.) However, after examination of the intrinsic evidence, the Court cannot conclude that I.C.E.'s definition is correct. The claim language at issue states: ". . . wherein said containment bag further has a series of straps positioned on said exterior surface of said containment bag." (Doc. 187-2, at 9.) The specification of the '676

Patent does not indicate that the straps are limited to the types that I.C.E. suggests, nor does the prosecution history indicate that Pactec relied on Figure 6 for patentability. Therefore, I.C.E. has not met the "exacting" burden for claim disavowal.[5] *Thorner*, 669 F.3d at 1365. As a result, the Court does not find that the written description defines either term, and it will not read a limitation into the claims from the specification. *Renishaw*, 158 F.3d at 1248.

Furthermore, the intrinsic record is sufficient to construe this claim. I.C.E. specifically offers the deposition testimony of Troy Town, the inventor of the '676 Patent, as evidence the Special Master erred in his recommendation. (Doc. 202, at 15.) Beyond disfavoring extrinsic evidence when the intrinsic record is sufficient, the Federal Circuit has demonstrated an acute distrust of inventor testimony. For example, in *Howmedica Osteonics Corp. v. Wright Medical Tech., Inc.*, the Federal Circuit "rejected" the "distinction" between inventor testimony that purports to "enlarge the scope of the claims" and inventor testimony that purports to limit the claims. 540 F.3d 1337, 1346 (Fed. Cir. 2008). The *Howmedica* court went on to state "it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO." *Id*. at 1347. "The inventor might testify to a broad claim scope in order to increase the likelihood of a finding of infringement," but, "[t]he inventor might also testify to a narrower claim scope to avoid a challenge to the validity of the patent." *Id*. Ultimately, the Federal Circuit held that

---

[5] The prosecution history of the '676 Patent indicates that Pactec made narrowing amendments to independent claim one, adding the language regarding the straps. However, neither the specification nor the prosecution history defines those straps to be of the type suggested by I.C.E., nor does the specification or patent history require direct attachment of said straps to the bag. (*See* Doc. 187-13, at 74.)

"inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction." *Id*.

The evidence offered by I.C.E. in this case is precisely the type of inventor testimony that the Federal Circuit warned against in *Howmedica*. As a result, regardless of whether Town's statements purport to enlarge or limit the claims, the Court must heavily discount or disregard entirely such evidence.

Even if the Court construed Town's deposition testimony to be expert testimony, it would accord such expert testimony no weight. *See Bell & Howell Doc. Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("[R]eliance on extrinsic evidence to interpret claims is proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence . . . . [A]ny expert testimony that is inconsistent with unambiguous intrinsic evidence should be accorded no weight." (internal citations omitted)). Therefore, the Court will disregard the extrinsic evidence offered by I.C.E.

The Court agrees with Pactec that I.C.E. is "attempting to have the Court opine on an infringement issue in the context of a claim construction order." (Doc. 197, at 12.) Accordingly, the Court overrules I.C.E.'s objections and adopts the Special Master's proposed constructions of "series of straps" as "more than one" strap and "positioned on" as "located on," consistent with the ordinary meaning of the terms.

### D.    Claim Grouping 4: "extendable across said top portion of said containment bag"

The Special Master's recommendation regarding the construction of "extendable across said top portion of said containment bag" is "capable of being extended across the top portion of the containment bag." (Doc. 195, at 17.) Defendants request that the phrase "secured to resist flapping during transport" be added to the end of the construction. (Doc. 124, at 32.) I.C.E. has

13

requested clarification, but, again, it is actually objecting to the Special Master's recommendation. Specifically, I.C.E. contends that "the Special Master's analysis does not consider the allowable extrinsic evidence," that the Special Master relied upon irrelevant case law, and that the Special Master improperly considered the testimony of Pactec's claim construction expert. (Doc. 202, at 16.)

The Special Master primarily based his recommendation on the doctrine of claim differentiation. "[C]laim differentiation refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). This stems from a natural reading of the statute, which requires that "a claim in dependent form shall contain a reference to a claim previously set forth and then specify *a further limitation of the subject matter claimed*." 35 U.S.C. § 112(d) (emphasis added). "[T]he doctrine is at its strongest where the limitation sought to be read into an independent claim already appears in a dependent claim." *Seachange Int'l v. C-COR, Inc.*, 413 F.3d 1361, 1368–69 (Fed. Cir. 2005) (citations and internal quotations omitted). Additionally, the Federal Circuit has "characterized claim differentiation more generally, i.e., as the 'presumption that each claim in a patent has a different scope.'" *Id.* (quoting *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004)). The Court is mindful, however, that claim differentiation is "not a hard and fast rule of construction." *Id.* at 1369.

The claims at issue are claim one and claim twelve of the '676 Patent. Claim one identifies a containment bag "where said straps are extendable across said top portion of the containment bag." (Doc. 187-2, at 9.) Claim twelve claims a "combination of a dumpster container and containment bag according to claim 1 wherein said bag side walls form opposing

sides and said series of straps, when extending across said top portion, are securable between opposing sides of said containment bag to restrain said flap." (*Id.*) The relationship between the independent and dependent claims in this case strongly suggests that application of the doctrine of claim differentiation is appropriate: the limitation that I.C.E. seeks to be read into independent claim one—that the straps are meant to restrain the flap to prevent flapping during transport—is already contained within dependent claim twelve. *See Seachange*, 413 F.3d at 1330. Furthermore, while the language of claim twelve does not indicate that these straps are meant to prevent flapping during transport, the specification makes clear that this is at least one of the straps' purposes, though it does not indicate that it is their *exclusive* purpose. (*See* Doc. 187-2, at 9 ("When so secured, these straps help resist "flapping" of the bag top during transport in an open container.").) Therefore, reading the claims in light of the specification, it is inappropriate to import the limitation found in dependent claim twelve into independent claim one. *See Renishaw*, 158 F.3d at 1248.

While the "extendable" feature is identified in both claim one and claim twelve, the feature that the straps "are securable between opposing sides of said containment bag to restrain said flap" is completely absent from independent claim one. Therefore, defining "extendable across said top portion of said containment bag" to require the straps be used to resist flapping would, in essence, render dependent claim twelve partially, if not wholly, superfluous.[6] *See InterDigital Comm'ns, LLC v. Int'l Trade Commc'ns*, 690 F.3d 1318, 1324–25 (Fed. Cir. 2012);

---

[6] I.C.E. primarily relies upon *Profectus Tech. LLC*, 823 F.3d 1375, to support its position. Its reliance on *Profectus* is, however, misplaced. In *Profectus*, the Federal Circuit did indeed affirm a limiting construction of the term "mountable." However, in that case, "mountable" appeared in every independent claim—not just the dependent claims. Here, there is language that appears solely in dependent claim 12, and, further, I.C.E. fails to identify in the intrinsic record where the Court should read the limitation "to resist flapping during transport" from.

*see also Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("To the extent that the absence of such difference in meaning and scope [between the claims] would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

I.C.E. also argues that Special Master Bayer erred in not considering the extrinsic evidence offered by I.C.E. This assertion is meritless. When the intrinsic record is unambiguous, extrinsic evidence need not be considered. *See, e.g.*, *Profectus Tech*, 823 F.3d at 1380 (Fed. Cir. 2016) ("Although courts are permitted to consider extrinsic evidence (e.g., expert testimony, dictionaries, treatises), such evidence is generally of less significance than the intrinsic record. . . . Extrinsic evidence may not be used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."). Again, I.C.E. insists that the Court consider the testimony of Troy Town. As discussed previously, Town's testimony is of limited value to the Court, as he is the inventor of the patent-in-suit. Additionally, the claim language and intrinsic record are not ambiguous here, and the doctrine of claim differentiation counsels in favor of the Special Master's definition.[7] Consequently, the Court will adopt his recommendation and construe the term "extendable across said top portion of said containment bag" as "[where said straps] are capable of being extended across the top portion of the containment bag."

---

[7] I.C.E. contends that the Special Master improperly applied means-plus-function standards to the claim at issue. Even if I.C.E. is correct that Special Master Bayer erred in applying the means-plus-function caselaw, it does not change the Court's analysis regarding claim differentiation. Reviewing the evidence *de novo*, the Court reaches the same conclusion as the Special Master without reference to means-plus-function caselaw. As a result, the Court determines that any legal error committed by the Special Master is harmless.

### E.      Claim Grouping 5:  "fabric bag"

The Special Master, in construing the term "fabric bag," found that Pactec sought to import a limitation from the specification of the '281 Patent[8] into the claim.  (Doc. 195, at 17.) Pactec proposes that the word "fabric" mean a "woven or non-woven bag"; I.C.E, on the other hand, suggests a construction of "a non-self-supporting bag."  (*Id*.)  The parties agree that "bag" does not require construction.  (Doc. 118, at 26.)  Instead, the parties' dispute centers around the term "fabric."[9]

While the Special Master found that I.C.E.'s definition imported a limitation from the dependent claims into the independent claim, he also found that Pactec relied on the fact that the bag was not self-supporting in order to overcome rejection by the PTO.  (*Id*. at 18.) Consequently, Special Master Bayer recommends a construction that combines the parties' suggestions:  "a woven or non-woven, but not a self-supporting bag."  (*Id*.)  Pactec contends that Special Master Bayer misconstrues the prosecution history of the '281 Patent and asks the Court to adopt its proposed construction of "fabric bag":  "a woven or non-woven bag."  (*See* Doc. 118, at 28.)

---

[8] While the Court analyzes the '281 Patent to discern the term's meaning, "fabric bag" appears in the '281, '282, and '345 Patents.

[9] Regardless of the construction of the term "fabric," the product must still be a "bag."  A "bag" is defined as "a container of flexible material . . . that is used for carrying or storing items."  *The American Heritage Dictionary of the English Language* 133 (4th ed. 2000).  While "a general-usage dictionary cannot overcome art-specific evidence of the meaning," there is no concern about the use of a lay dictionary in this case.  *Vanderlande Indus. Nederland v. I.T.C.*, 366 F.3d 1311, 1321 (Fed. Cir. 2004).  The parties agree that the meaning of the word "bag" is self-evident, as the patents-in-suit relate to "bags" in the ordinary sense—specifically, containers for waste.  The Federal Circuit has endorsed the use of lay dictionaries in cases like this, stating "[t]o the extent that [an] artisan would understand a claim term to have the same meaning in the art as that term has in common, lay usage, a general-usage dictionary can be a helpful aid to claim construction."  *Id*.

The prosecution history of the '281 Patent reveals that Pactec was required to overcome prior art—specifically *Khanna*, which "teaches a series of straps that extend down the sidewall, across the bottom of the bag, an [sic] up the other sidewall." (Doc. 126-3, at 23.) However, the thrust of the patent examiner's first round of objections based on *Khanna* involved the lifting-strap system, not the bag itself. (*Id*. at 24.) During a subsequent round of amendments, the examiner noted that "further definition of the bottom portion would help to overcome the *Khanna* reference." (*Id*. at 34.)

In 2012, Pactec amended independent claim 20, which ultimately became independent claim one of the '281 Patent, to *remove* the words "non-self-supporting" from the claim. (*Id*. at 39.) Pactec then amended dependent claim 23, which maintained the "non-self-supporting" limitation. (*Id*. at 40.) Similarly, independent claim 33 maintained the "non-self-supporting" limitation. (*Id*. at 43.) The examiner rejected independent claim 20 based on *Khanna*. (*Id*. at 47.) However, this rejection was based on the strap system, as well as the configuration of the bag's openings. (*Id*. at 49.) Pactec overcame these objections, and the claims were allowed on the basis that Pactec's "invention appears unique in that it combines a single-opening cargo bag with a slidingly attached lifting strap system, wherein the lifting strap system comprises an interconnected web of a plurality of lifting straps." (Doc. 118-3, at 38.) The '281 Patent was issued without a limitation regarding non-self-supporting bags in independent claim one.

I.C.E. argues that the following language in the specification of the '281 Patent supports its construction of "fabric bag" not including bags that are self-supporting:

> Shown in FIG. **1** is one embodiment of the invention, comprising a lifting bag **1**, construed to meet IP-2 standards for 24,000 lbs capacity. The bag **1** has two opposing sidewalls **2, 3**; two opposing end walls **4, 5**; a top portion **10**; and a bottom **20**. . . . Other bag shapes and sizes are possible, such as a cubical shape or cylindrical shape. *As the bag is not self supporting*, a frame **11000** must be provided to support the bag during loading . . . .

(Doc. 118-3, at 27) (emphasis added).  This language in the specification, though, relates to a single embodiment of the '281 Patent, as evidenced by the phrase "one embodiment of the invention."  Because the description is limited to a specific preferred embodiment, the Court concludes that the words "not self supporting" relate only to the single embodiment described, and not to other potential embodiments of the invention.  Reading a limitation into the independent claim one from the specification would therefore be inappropriate, as there is no evidence in the intrinsic record that Pactec used the "non-self-supporting" language to overcome a rejection.  *See, e.g.*, *Cadence Pharms. Inc v. Exela PharmSci Inc.*, 780 F.3d 1364, 1369 (Fed. Cir. 2015).

Pactec also contends that it removed the "non-self-supporting" language from independent claim one of the '281 Patent to broaden, not narrow, the claim.  (Doc. 197, at 16.)  There is substantial support in the claims themselves, as well as the prosecution history, for its argument.  Pactec amended independent claim one to remove the contested language but left the language in dependent claim four and independent claim twelve.  (*See* Doc. 126-3.)  Doctrines of claim construction generally counsel in favor of presuming that each claim covers a different scope.  *See Seachange*, 413 F.3d at 1330.  And I.C.E. points to no specific evidence in the record that indicates that Pactec relied on the "non-self-supporting" language to overcome prior art.  Evidence of changes to independent claim twelve[10] indicates that the examiner requested changes to that specific claim, not independent claim one, to overcome the reference to *Khanna*.  (Doc. 197, at 17 (citing to Doc. 126-3).)  There is no discussion of independent claim one, or the need to narrow it to non-self-supporting bags to overcome rejections.  The Court agrees with

---

[10] What is now independent claim twelve in the '281 Patent was prosecuted as independent claim 33.  (*See* Doc. 197, at 17.)

Pactec:  there is insufficient evidence in the record to support a "clear and unmistakable" waiver of claim scope.  *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325–26 (Fed. Cir. 2013).  Therefore, the Court determines that Pactec did not disavow the scope of independent claim one and that independent claim one should be read to include both self-supporting and non-self-supporting bags.

I.C.E. again seeks to introduce statements by Troy Town, the inventor of the '281 Patent, to persuade the Court that even the inventor did not believe the Patent covered self-supporting bags.  (Doc. 204, at 3.)  Additionally, I.C.E. offers the declaration of Al Beale, the founder of I.C.E.'s predecessor, Strategic Packaging Systems.  However, as the Court has already stated, extrinsic evidence, and especially inventor testimony, is disfavored where the intrinsic record is sufficient to determine the proper construction.  *See Howmedica*, 540 F.3d at 1346.

Therefore, the Court adopts the Special Master's recommendation as it relates to the material of the bag, as the bags are exclusively manufactured of woven or non-woven material. The Court will, however, modify his recommendation and construe the term "fabric bag" as "a woven or non-woven bag."

F.     **Claim Grouping 6:  "a single, closeable opening"**

The Special Master recommends construing the claim term "a single, closeable opening" as "only one opening on the fabric bag which can be opened and closed."  (Doc. 195, at 19.) I.C.E. objects and asks the Court to adopt its preferred construction, "a single, closeable opening on the entire bag."  (Doc. 202, at 30.)  The crux of the disagreement between Pactec and I.C.E. is whether the claim permits an opening on the fabric bag, as well as an opening on the interior liner, or whether there must be solely one opening inclusive of both the liner and the fabric bag.

Pactec persuasively argues that I.C.E. has "conflate[d] [] the "fabric bag" element and its attendant limitations with the overall "lifting bag."" (Doc. 197, at 21.) Claim one of the '281 Patent states: "[a] lifting bag comprising a) *a fabric bag* having a bottom, a sidewall, *and a single, closeable opening* . . . b) a strap system . . ." (Doc. 187-4, at 30 (emphasis added).) The "single, closeable opening" limitation is clearly associated with the fabric bag—a component of the lifting bag—and not the lifting bag as a whole. (*See also* Doc. 187-5, at 30 ('282 Patent) (describing "[a] method of lifting a lifting bag, wherein said fabric bag, having . . . a single, closeable opening . . .").) The '281 Patent's specification also contemplates use of an inner liner with a separate opening: "[w]hen used for construction debris, the bag may include an inner liner, lining all or part of the interior. . . . Inner liner may have a separate zipper attached district from the topmost zipper." (Doc. 187-4, at 28.) The '282 Patent and '345 Patent contain the same language regarding the use of an inner liner in its specification. (Doc. 187-5, at 28; Doc. 187-6, at 29.)

Furthermore, the Court agrees with the Special Master's characterization of I.C.E.'s evidence from the prosecution history. While Pactec was required to overcome the reference to *Khanna*, it appears that the examiner took issue with the positioning of openings on the fabric bag. (Doc. 187-14, at 49.) The bag in *Khanna* contained openings on the top and bottom of the bag, unlike the '281 lifting bag. (*Id.*) And, as the Special Master notes, I.C.E.'s proposed language is not found in the prosecution history. Accordingly, the Court agrees with the Special Master and adopts his proposed construction of the term "a single, closeable opening": "only one opening on the fabric bag which can be opened and closed." (Doc. 195, at 19.)

**G.     Claim Grouping 7: "lifting strap system" and "lifting strap sling"**

Special Master Bayer proposes that (1) "lifting strap system" be construed as "a system comprising a plurality of lifting straps," and (2) "lifting strap sling" be construed as "lifting straps configured to support the weight of a bag when lifted." (Doc. 195, at 21.)  As Special Master Bayer notes, both parties agree that the terms should be construed to contain a "plurality of lifting straps."  (*Id*. at 19.)  The parties dispute, however, whether the terms should be read to require that the plurality of straps be "everywhere detached from the bag."  (*Id*.)  The Special Master ultimately rejected I.C.E.'s attempt to add the "everywhere detached" limitation, determining that it was an improper attempt to read a limitation into the claim from a preferred embodiment.  (*Id*. at 20.)  I.C.E. objects to the Special Master's proposed construction, asserting that he "erroneously did not [] consider several pieces of extrinsic evidence," that it is not improperly importing a limitation from the '281 Patent's specification, and that Pactec expressly disavowed claim scope through criticism of, and distinguishing the invention from, prior art. (Doc. 202, at 21–22.)

"Mere criticism of a particular embodiment encompassed in the plain meaning of claim term is not sufficient to rise to the level of clear disavowal."  *Thorner*, 669 F.3d at 1366.  Further, "[a] patentee's discussion of the shortcomings of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention."  *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009); *see also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("In general, statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope."). However, "where the specification describes the present invention as having a feature, that

representation may disavow contrary embodiments." *Techtronic Indus. Co. Ltd. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019).

The Court cannot embrace the argument that Pactec has criticized prior art or certain techniques such that it has disavowed such techniques contrary to plain scope of its claims. First, "a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364–65 (Fed. Cir. 2003). Second, the specification of the '281 Patent explicitly contemplates that the straps may be attached to the bag, stating that "the lifting straps or webbing can be attached to the bag but left 'detached' from the bag near the half portion of the bag, to prevent undue stress on the exterior surface of the bag during lifting operations." (Doc. 118-3, at 28.) Later, the specification states that "it is preferred that the lifting strap system be detached from the exterior surface of the bag near the top of the bag." (*Id*.) Finally, the specification notes its most preferred embodiment, which is the indirectly-attached lifting-strap system— where I.C.E. finds its proposed claim language. (*Id*.)

I.C.E. makes a claim differentiation argument regarding the claims in the '282 Patent. It contends that, because dependent claim nine of the '282 Patent claims "the method of claim 4 wherein said lifting straps are fixedly attached to said bag exterior only on said bottom portion," the Court should not read the "fixedly attached" limitation into independent claim four of the '282 Patent, as well as any other claim involving the contested terms in the '281 Patent and the '345 Patent.

The Court agrees with I.C.E. and the Special Master that the doctrine of claim differentiation requires that the limitation in dependent claim nine not be read into independent claim four of the '282 Patent. That is, independent claim four of the '282 Patent does not require

that the straps be only fixedly attached to the bottom of the bag.  The Court, however, cannot agree that the doctrine of claim differentiation requires the Court to determine that the "lifting strap system," or "lifting strap sling" is "everywhere detached" from the bags, as I.C.E. submits. And the limitation contained in independent claim nine should not be read into the other patents-in-suit's claims.  I.C.E. has not offered any precedent that indicates that reading limitations across patents is permissible, and the Federal Circuit's precedents counsel that this would be disfavored.  *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1312–13 (Fed. Cir. 1999) (admonishing the district court for using the patent title in claim construction).

Accordingly, the Court agrees with Special Master Bayer's proposed construction of the terms "lifting strap system" and "lifting strap sling."  The Court adopts his recommendation that the terms be construed as "a system comprising a plurality of lifting straps" and "lifting straps configured to support the weight of a bag when lifted," respectively.  (Doc. 195, at 21.)

**H.    Claim Grouping 8:  "adapted to support said bottom" . . .[11]**

The Special Master rejected I.C.E.'s proposed constructions for the terms contained in Claim Grouping 8, instead embracing Pactec's request for an "ordinary meaning" construction. (Doc. 195, at 22.)  The Special Master noted that claim differentiation counseled against adopting I.C.E.'s desired construction, which would have imposed the same construction on each of the claim terms.  Consistent with Pactec's requests, the Special Master construed: (1) "adapted to support said bottom" as "capable of reinforcing the bottom by bearing all or part of the weight of the load," (2) "support the bottom" as "reinforce the bottom by bearing all or

---

[11] Claim Grouping 8 also includes the following terms:  "support the bottom," "supporting the load," "supported entirely by the lifting sling," "adapted to support a load within said fabric bag," "adapted to support said fabric bag," "weight is lifted and supported by said series of coupled lifting straps," and "said fabric bag and said load is supported only by said lifting straps."

part of the weight of the load," (3) "supporting the load" as "bear all or part of the weight of the load," (4) "supported entirely by the lifting sling," as "bear all the weight of the load," (5) "adapted to support a load within said fabric bag" as "capable of bearing all or part of the weight of the load within the fabric bag," (6) "adapted to support said fabric bag" as "reinforce the fabric bag," (7) "weight is lifted and supported by said series of coupled lifting straps" as "weight is raised and borne by the lifting straps connected to the lifting device," and (8) "said fabric bag and said load is supported only by said coupled lifting straps" as "the bag and load are reinforced by the lifting straps which bear all of the weight of the load." (Doc. 195, at 23.) Neither party objects to Special Master Bayer's recommendations.

The doctrine of claim differentiation does, indeed, indicate that the Court should presume different claims have different scopes, and that separate claims should be construed differently. *Ag-Bag*, 392 F.3d at 1330. Consequently, the Court agrees with Special Master Bayer that adopting I.C.E.'s singular construction would be inappropriate. Furthermore, I.C.E. seeks to import limitations from the specification, but does not adequately support its argument of claim disavowal, as it offers no evidence from the examiner that the additional paragraph added to the '281 Patent's specification was intended to add the limitation of "free vertical movement" or "floating." (*See* Doc. 124, at 46.) Because the Court applies a "heavy presumption in favor of the ordinary meaning of claim language as understood by one of ordinary skill in the art," *Bell Atl. Network Servs., Inc. v. Covad Comms. Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001), and because it "may not read a limitation into a claim from the written description," the Court agrees with Special Master Bayer's decision to endorse Pactec's proposed ordinary-meaning constructions. *Renishaw*, 158 F.3d at 1248. Accordingly, the Court adopts the Special Master's proposed constructions of the claim terms in Claim Grouping 8.

## I.    Claim Grouping 9:  "coupling of said fabric bag to said lifting straps" . . .[12]

Neither party has specifically objected to the Special Master's constructions of the terms in Claim Grouping 9.  Special Master Bayer recommends that (1) "coupling of said fabric bag to said lifting straps" be construed as "indirect attachment of the fabric bag to the lifting straps," (2) "couple the lifting straps to the fabric bag" as "indirectly attach the lifting straps to the fabric bag," (3) "said lifting straps coupled to said fabric bag" as "the lifting straps are indirectly attached to the fabric bag," (4) "coupled to one of said top loops" as "indirectly attached to one of the top loops," and (5) "not directly attached to said bag" as "indirectly attached to said bag." (Doc. 195, at 25.)  In doing so, the Special Master rejects I.C.E.'s invitation to construe each term as "indirect attachment of the bag to the lifting straps such that the straps can move vertically in an unrestricted manner with respect to the bag."  (Doc. 124, at 45.)  Instead, he relies upon Pactec's statement that "coupled" means "indirectly attached" to arrive at his recommended construction.  (Doc. 195, at 24; Doc. 118, at 32.)  Pactec argues that it acted as its own lexicographer and defined "coupled" as "indirectly attached" in the specification of the '282 Patent.  (Doc. 118, at 32.)  "To act as his own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  There must be a clearly expressed intent to define the disputed term.  *Id*. (citing *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)).  The '282 Patent's specification states, in relevant part:

---

[12] Claim Grouping 9 also includes:  "couple the lifting straps to the fabric bag," "said lifting straps coupled to said fabric bag," "coupled to one of said top loops," "not directly attached to said bag."

A more preferred design is to use a lifting strap system that is everywhere detached from the bag or only indirectly attached to the bag (e.g., coupled to the bag) to support and lifted the bag. As used herein, "directly" attached means a sewn or welded attachment (or another means of attachment) where the lifting strap, at the point of attachment, cannot move independently from the bag material. Indirect attachment, or coupling, is a means of positioning the lifting strap on the exterior of the bag but allows for movement of the strap with respect to the exterior bag material at the point of indirect attachment. For instance, using a retention loop to position the lifting strap on the bags . . . is indirect attachment or coupling of the lifting straps to the bag.

(Doc. 187-5, at 28.) Pactec evinces a clear intent to define the term "coupling" as "indirect attachment" as the specification states a particular method of "indirect attachment," and further makes clear that "coupling" is a synonym for indirect attachment. Pactec demonstrates that indirect attachment and coupling are meant to be interpreted in the same manner in stating "[i]ndirect attachment, *or* coupling." (*Id.*)

In the specification, Pactec distinguishes between "direct attachment" and "indirect attachment," noting that only directly attached straps are "sewn or welded" to the bag. Indirect attached, or coupled, straps are, therefore, not sewn or welded to the bag. Consequently, the Court determines that indirect attachment and coupling are meant to be used interchangeably and that Pactec acted as its own lexicographer in defining the term "couple." *See, e.g.*, *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371–74 (Fed. Cir. 2003) (finding that the patentee had acted as its own lexicographer in stating that "embossed means a topography on a web" and "multiple embossed means two or more embossing patterns are superimposed on the web" in the patent-in-suit's specification).

Consequently, the Court agrees with the Special Master's analysis. I.C.E.'s proposed construction contemplates straps that are everywhere detached from the bag through the words "unrestricted manner." As discussed earlier, the Court declines to read in the limitation that the straps must be everywhere detached from the bag. For example, the straps could be indirectly

attached to the bag at a particular point of contact, yet directly attached at another. Furthermore, the doctrine of claim differentiation indicates that the Court should not construe multiple claim terms in a singular manner; however, where the same term is used in multiple claims, there is "a presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and the prosecution history that the terms have different meanings at different portions of the claims." *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009) (citing *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007)). The word "couple" appears in all the claims in Claim Grouping 9, and the Special Master appropriately construes this term to mean "indirectly attached," consistent with Pactec's admission. Accordingly, the Court adopts the Special Master's proposed constructions of the terms in Claim Grouping 9.

J.     **Claim Grouping 10: "free to move vertically" . . .[13]**

Again, neither party has raised specific objections the Special Master's construction of the terms in Claim Grouping 10. Rather, the dispute centers on whether the straps are everywhere detached from the bag, as I.C.E. requests that each term be construed in accordance with this limitation. (Doc. 124, at 49–50.) The Special Master again rejects this argument and proposes the following constructions: (1) "free to move vertically" as "moveable in a vertical direction," (2) "allowing the lifting straps to move vertically" as "allowing the lifting strap to move in a vertical direction," (3) "allow the lifting straps to be slidable vertically" as "allow the lifting straps to be slidable in a vertical direction," (4) "said lifting strap system is slidable with

_____

[13] Claim Grouping 10 also includes: "allowing the strap to move vertically," "allow the lifting straps to be slidable vertically," "said lifting strap system is slidable with respect to said bag," "top edge of said bag moves vertically downwards," "top edge moves vertically downward," and "allow the coupled lifting straps to be moved vertically."

respect to said bag" as "lifting strap system is slidable relative to the fabric bag at the points where the lifting straps are indirectly attached to the fabric bag near the bag top portion," (5) "top edge of said bag moves vertically downward" as "the top edge of the bag is moveable downward in the vertical direction," (6) "top edge moves vertically downward" as "top edge moves downward in the vertical direction," and (7) "allow the coupled lifting straps to be moved vertically" as "allowing the indirectly attached lifting straps to move in a vertical direction." (Doc. 195, at 26.)

I.C.E. argues that because the '282 Patent's specification states that the straps are "detached from the sides of the bag," the Court should conclude that the straps must be everywhere detached from the bag. (Doc. 124, at 49–51; Doc. 187-5, at 31.) The Court disagrees. Reading in a limitation of "everywhere detached" from the phrase "detached from the sides of the bag" would be impermissible, as it derives from the specification and is unsupported by the claim language. *See Renishaw*, 158 F.3d at 1258.

Further, I.C.E. states that the doctrine of claim differentiation mandates its preferred construction. (Doc. 124, at 49.) If I.C.E. faithfully read the claim language, that might be the case. However, I.C.E. reads the claim language in independent claim four of the '282 Patent too narrowly. Claim four states that the straps are "coupled" to the bear "near said top portion," and that the strap system is "slidable . . . about said coupling points." (Doc. 187-5, at 31.) Claim four says nothing about if, or how, the straps may be directly attached to the bag. Claim nine states that the straps are *only* "fixedly attached" to the "bottom portion" of the bag. (*Id.*) Because claim nine must state an additional limitation, the Court determines that the straps could be otherwise attached to the bag described in claim four and declines to construe the claims as

requiring the straps to be everywhere detached from the bag.  Therefore, the Court will adopt the Special Master's recommended construction of the claim terms in Claim Grouping 10.

### K.    Claim Grouping 13:  "lifting frame"

I.C.E. urges adoption of the Special Master's proposed construction of the term "lifting frame," and Pactec has not raised a specific objection to this construction.  (Docs. 202, 197.)  The Special Master recommends the term "lifting frame" be construed as "a grid structure having a plurality of a parallel lift bars connected to a center support and a plurality of lifting hooks, wherein each lifting hook is designed for receiving one lifting strap connector."  (Doc. 195, at 28.)  Special Master Bayer grounds his recommended construction in the principle that claims are construed in accordance with how they would be understood by someone of ordinary skill in the art, *see Covad Communications*, 262 F.3d at 1268, and that there is intrinsic evidence indicating that Pactec had relied on prior-art lifting frames.  (*Id*.)

The Court agrees with Special Master Bayer that, while Pactec offers other potential avenues for lifting, such as a crane, rope, or webbing, these avenues are separate from the "lifting frame" identified in the specification of the '282 Patent and, further, that the term "lifting frame" has a particular meaning to those of ordinary skill in the art.  Furthermore, Pactec relied on these prior art lifting frames in the specification, stating that the lifting bag could be used with "any other type of lifting frame known in the art."  (Doc. 187-5, at 31.)  Therefore, while it is possible that Pactec's bags could be lifted with an apparatus that is not a lifting frame—such as by those alternative methods identified in the specification—the term "lifting frame" in the '282 Patent should be given its ordinary meaning in the art, which is "a grid structure having a plurality of parallel lift bars connected to a center support and a plurality of lifting hooks, wherein each lifting hook is designed for receiving one lifting strap connector."

## IV.    CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART** and **MODIFIES IN PART** the Special Master's report and recommendations (Doc. 195).  I.C.E.'s objections to the report and recommendations (Doc. 201) are **OVERRULED**.  The Court **ADOPTS** the Special Master's constructions contained in Claim Groupings 1 through 4 and 6 through 13.  Pactec's objection to the report and recommendations (Doc. 197) is **SUSTAINED**.  The Court **MODIFIES** the Special Master's construction of Claim Grouping 5—"fabric bag"—and determines that it should be construed as a "woven or non-woven bag."

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

31